HILL v CITY OF WARREN

Docket No. 266426. Submitted July 17, 2007, at Detroit. Decided July 24, 2007, at 9:00 a.m. Leave to appeal sought.

Robert and Shirley Hill brought an action in the Macomb Circuit Court against the city of Warren, alleging trespass-nuisance, negligence, and governmental taking as a result of damage inflicted by trees planted by the defendant on public easements between the sidewalk and the street curb in front of the plaintiffs' residence. The plaintiffs filed an amended class action complaint shortly thereafter. The court, James M. Biernat, J., denied the motion for class certification. The Court of Appeals denied the plaintiffs' application for leave to appeal, but, on reconsideration, the Court, KELLY, P.J., and DOCTOROFF and JANSEN, JJ., issued a peremptory order reversing the order of the trial court and remanding the case for the entry of an order granting class certification. Unpublished order of the Court of Appeals, entered January 29, 2001 (Docket No. 229292). The Supreme Court, in an unpublished order, entered March 5, 2002 (Docket No. 118639), held the defendant's application for leave to appeal in abeyance while its decision in *Pohutski v City of Allen Park*, 465 Mich 675 (2002), was pending. After the *Pohutski* decision, the Supreme Court, in lieu of granting leave to appeal, vacated the order of reversal of the Court of Appeals and remanded the matter to the Court of Appeals for plenary consideration. 466 Mich 871 (2002). The Court of Appeals, ZAHRA, P.J., and MURRAY and FORT HOOD, JJ., issued an unpublished opinion per curiam, decided February 4, 2003 (Docket No. 229292), that reversed the order of the trial court denying class certification on the basis that the denial was clearly erroneous. The Supreme Court, in lieu of granting leave to appeal from that opinion, issued a peremptory order reversing the opinion of the Court of Appeals and remanding the matter to the trial court, holding that the denial of class certification was not clearly erroneous. 469 Mich 964 (2003). On remand, the trial court granted the plaintiffs' renewed motion for class certification. The Court of Appeals, GAGE, P.J., and CAVANAGH and SAAD, JJ., denied the defendant's application for leave to appeal from that order in an unpublished order, entered

April 11, 2005 (Docket No. 259706). The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for consideration as on leave granted. 474 Mich 916 (2005), directing the Court of Appeals to consider whether *Pohutski* affects the class certification issue because the *Pohutski* holding was to be applied only to cases brought on or after April 2, 2002.

The Court of Appeals *held*:

1. MCR 3.501(B)(1), which provides that a plaintiff who files a complaint that includes class action allegations must move for class action certification within 91 days of filing the complaint, does not preclude subsequent motions for certification or mandate any particular timing requirements for bringing them. The plaintiffs were not precluded by the court rule from bringing their renewed motion for class certification. MCR 2.604(A) gave the trial court explicit procedural authority to revisit its order denying class certification while the proceedings were still pending and, on that reconsideration, to determine that the original order was mistaken. The trial court was not precluded by MCR 7.208(A) from setting aside or amending its order after the matter was remanded to the trial court.

2. The law of the case doctrine did not preclude the trial court from reversing its original denial of class certification. The Supreme Court did not hold that class certification was unwarranted. Rather, the Court held that denying it was not clearly a mistake.

3. The trial court did not clearly err in concluding that all five considerations specified in MCR 3.501(A)(1) for deciding whether to certify a class supported class action certification.

4. The holding in *Pohutski* that the governmental tort liability act, MCL 691.1407, does not permit a trespass-nuisance exception to governmental immunity is properly applied to cases brought on or after April 2, 2002. In all cases pending before that time, such as this case, the interpretation set forth in *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139 (1988), which allowed a trespass-nuisance exception, remains available. Plaintiffs who were not named as plaintiffs in this action as of April 2, 2002, are not prevented from advancing trespass-nuisance claims. The *Pohutski* holding with regard to its application is intended to apply to cases, rather than to parties.

5. There is no limitations period applicable to the unnamed class members' becoming part of this litigation.

Affirmed.

1. ACTIONS — CLASS ACTIONS — MOTIONS AND ORDERS.

A plaintiff who files a complaint that includes class action allegations must move for class action certification within 91 days of filing the complaint, except by stipulation of the parties or on motion for good cause shown; subsequent motions for class certification are not precluded (MCR 3.501[B][1]).

2. MOTIONS AND ORDERS — AMENDMENTS OF ORDERS — APPEAL AND ERROR.

A trial court is prohibited by a court rule from amending or setting aside an order while an appeal from the order is pending; the rule does not prevent a trial court from amending its order after the matter has been remanded to the trial court (MCR 7.208[A]).

3. APPEAL AND ERROR — CLEAR ERROR.

A finding by an appellate court of no clear error means that the court was not definitely and firmly convinced that a mistake was made, not that it is definitely and firmly convinced that a mistake was not made.

4. ACTIONS — CLASS ACTIONS.

A plaintiff seeking to have a class certified must show that the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members, the claims or defenses of the representative parties are typical of the claims or defenses of the class, the representative parties will fairly and adequately assert and protect the interests of the class, and the maintenance of the action as a class action will be superior to other methods of adjudication in promoting the convenient administration of justice (MCR 3.501[A][1][a]-[e]).

*Mantese and Associates, P.C.* (by *Gerard V. Mantese* and *Mark C. Rossman*), and *Fraser & Souweidane, P.C.* (by *Stuart A. Fraser, IV*), for the plaintiffs.

*Garan Lucow Miller, P.C.* (by *Rosalind Rochkind* and *John J. Gillooly*), for the defendant.

Before: DAVIS, P.J., and HOEKSTRA and DONOFRIO, JJ.

DAVIS, P.J. Defendant appeals the trial court's order granting plaintiffs' motion for class certification. We affirm.

This is not the first time this matter has been before this Court. In a prior appeal, this Court set forth the background facts:

> In the late 1950's and early 1960's, the City of Warren planted silver maple trees on public easements between the sidewalk and street curb in front of residents' homes. In 1967, the city prohibited further planting of silver maples because they grow quickly and should have been planted away from structures and streets to avoid interference with sewers and sidewalks. As the trees matured, their roots outgrew the space in which they were planted, and began to bore into the plaintiffs' adjacent private property. The roots invaded and obstructed the sewer pipes which resulted in raw sewage and water backups into plaintiffs' homes. The roots also grew upward and lifted the concrete sidewalk blocks which caused the sidewalk to be uneven and dangerous. The roots also destroyed the surface of plaintiffs' lawns and killed grass and vegetation. Also, plaintiffs spent a considerable amount of time and money for cleaning and repairs after their homes were flooded with raw sewage.
>
> Because of certain provisions in the Warren Code, plaintiffs may not remove the silver maples and those residents who have tried to obtain a permit from the Director of Parks and Recreation to remove the trees have been repeatedly ignored or denied permission to do so. Defendant has not compensated plaintiffs for the damage caused by its trees, but has enacted various ordinances in order to help alleviate the problem. These measures include a cost-sharing plan for sidewalk replacement and the formation of a Sidewalk and Tree Board of Review. [*Hill v City of Warren*, unpublished opinion per curiam of the Court of Appeals, issued February 4, 2003 (Docket No. 229292).]

Plaintiffs seek redress as a class encompassing all property owners in the city who are similarly affected. Defendant opposes class certification. Plaintiffs' substantive claims include trespass-nuisance, negligence, and governmental taking.

This litigation was commenced by Robert and Shirley Hill[1] in their individual capacities, and they filed an amended class action complaint shortly thereafter. The trial court originally denied their timely motion for class certification, concluding that the litigation would entail too much individualized fact-finding. Plaintiffs filed an application for leave to file an interlocutory appeal in this Court, in Docket No. 229292. This Court initially denied leave to appeal, but on reconsideration issued a peremptory order reversing the trial court and remanding the case for entry of an order granting class certification. Unpublished order of the Court of Appeals, entered January 29, 2001 (Docket No. 229292). Defendant sought leave to appeal in our Supreme Court, and our Supreme Court in an unpublished order, entered March 5, 2002 (Docket No. 118639), held that application in abeyance pending its decision in *Pohutski v City of Allen Park*, 465 Mich 675; 641 NW2d 219 (2002). Following its decision in *Pohutski*, the Supreme Court, in lieu of granting leave to appeal, vacated this Court's peremptory order of reversal and remanded to this Court for plenary consideration. 466 Mich 871 (2002). This Court then issued the unpublished opinion quoted above, holding that the trial court's denial of class certification was clearly erroneous. On November 21, 2003, our Supreme Court, in lieu of granting leave to appeal from our unpublished opinion, issued another peremptory order reversing this Court, holding that the

---

[1] Because they subsequently sold their home in Warren, they are no longer parties to this suit.

trial court's "denial of class certification was not clearly erroneous," and remanding to the trial court for further proceedings. 469 Mich 964 (2003).

On remand, some additional discovery took place. Plaintiffs then filed a "renewed motion for class certification." The trial court observed that its initial denial had "always been a close decision," and after "much careful consideration of the record and pleadings filed since the Court's initial decision denying class certification," it had become persuaded that class certification was the superior way for the action to proceed. It therefore granted class certification. Defendant applied for leave to appeal, which this Court denied for failure to persuade this Court of the need for immediate appellate review. Unpublished order of the Court of Appeals, entered April 11, 2005 (Docket No. 259706). Defendant then applied for leave to appeal in our Supreme Court, which, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted. Our Supreme Court further directed us to

> consider whether *Pohutski v City of Allen Park*, 465 Mich 675 (2002), affects the class certification issue in this case. *Pohutski* held that § 7 of the governmental tort liability act, MCL 691.1407, does not permit a trespass-nuisance exception to governmental immunity, but ruled that this holding would be applied only to cases brought on or after April 2, 2002. In light of *Pohutski*, are issues relating to putative plaintiffs unnamed as of April 2, 2002, sufficiently disparate from issues relating to plaintiffs who were named as of April 2, 2002, to the extent that certification of a single class containing both groups of plaintiffs would be inappropriate under MCR 3.501(A)(1)? [474 Mich 916 (2005).]

The matter is therefore now before this Court for consideration as on leave granted.

Defendant first argues that the trial court was procedurally precluded from considering plaintiffs' "renewed motion for class certification" by statute, caselaw, or court rule. We disagree.

Interpretation of a statute is a question of law reviewed de novo on appeal. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). Interpretation of a court rule follows the general rules of statutory construction, and both "must be construed to prevent absurd results, injustice, or prejudice to the public interest." *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999). However, if the language is unambiguous, "the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case." *Veenstra, supra* at 160. The scope of a trial court's powers is also a question of law reviewed de novo on appeal. *Traxler v Ford Motor Co*, 227 Mich App 276, 280; 576 NW2d 398 (1998). The application of the law of the case doctrine is also a question of law reviewed de novo on appeal. *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

Under MCR 3.501(B)(1), a plaintiff who files a complaint that includes class action allegations must move for class action certification within 91 days of filing the complaint, except by stipulation of the parties or on motion for good cause shown. If the plaintiff fails to do so, the class action allegations may be stricken unless the plaintiff shows excusable neglect. MCR 3.501(B)(2). "If certification is denied or revoked, the action shall continue by or against the named parties alone." MCR 3.501(B)(3)(e). Defendant argues that even if plaintiffs could file a renewed motion after the remand order from our Supreme Court, plaintiffs would have been required to do so within 91 days thereof, which plaintiffs failed to do.

There are no published cases in Michigan[2] substantively addressing the pertinent provisions of the court rule, or the amended version of the predecessor rule, former GCR 1963, 208.2(A), which specified 90 days instead of 91 but was otherwise virtually identical to the current MCR 3.501(B)(1). The committee comments to Rule 208.2(A) indicate that the addition of a timing requirement was "designed to prevent cases from remaining pending for extended periods without the propriety of a class action being raised." 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), 1984 pocket part, p 341. Furthermore, the court rules explicitly permit a trial court to *de*certify a class at any time after certification, and thus requires "that motions for decertification be treated as distinct and independent motions that implicate the same considerations as a motion to certify a class action, rather than as a motion for reconsideration." *Tinman v Blue Cross & Blue Shield of Michigan*, 264 Mich App 546, 561; 692 NW2d 58 (2004). There is no time limitation on a motion for decertification, and indeed a party could theoretically file multiple motions, subject to the prohibition against groundless motions found in MCR 2.114. *Tinman, supra* at 561 n 11. The plain language of the court rule mandates that *a* motion for certification be brought within 91 days of the complaint; it does not forbid subsequent motions for certification or mandate any particular timing requirements for bringing them. Plaintiffs complied with the court rule.

Defendant next argues that plaintiffs' renewed motion was really a motion for reconsideration that was

---

[2] Federal Rule of Civil Procedure 23 has no similar time limitations, likely making any federal precedent inapplicable. See *Tinman v Blue Cross & Blue Shield of Michigan*, 264 Mich App 546, 557-562; 692 NW2d 58 (2004).

impermissible because it was not made within the 14-day period permitted under MCR 2.119(F). Although the trial court treated the motion as one for reconsideration, plaintiffs did not present it as such. As a general matter, courts are permitted to revisit issues they previously decided, even if presented with a motion for reconsideration that offers nothing new to the court. MCR 2.119(F)(3); *Smith v Sinai Hosp of Detroit*, 152 Mich App 716, 722-723; 394 NW2d 82 (1986). In any event, MCR 2.119(F)(1) explicitly refers to MCR 2.604(A) as "another rule" that "provides a different procedure for reconsideration of a decision . . . ." Under MCR 2.604(A), an order that does not dispose of all issues in a case does not terminate the action or entitle a party to appeal as of right and "is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties." The court rules therefore give the trial court explicit procedural authority to revisit an order while the proceedings are still pending and, on that reconsideration, to determine that the original order was mistaken, as the trial court did here. Defendant asserts that because MCR 7.208(A) prevents a trial court from setting aside or amending an order while an appeal from that order is pending, it must not be able to do so after the appeal has been decided and the matter is returned to the trial court. However, filing a claim of appeal only prevents the trial court from amending its orders while the appeal is pending, not after remand. *Wilson v Gen Motors Corp*, 183 Mich App 21, 41-42; 454 NW2d 405 (1990).

Defendant's final procedural argument is that the "law of the case" doctrine precludes the trial court from reversing its initial denial of class certification, given that its denial had been affirmed by our Supreme Court. "The law of the case doctrine provides that if an

appellate court has decided a legal issue and remanded the case for further proceedings, the legal issue determined by the appellate court will not be differently decided on a subsequent appeal in the same case where the facts remain materially the same." *Grace v Grace*, 253 Mich App 357, 362; 655 NW2d 595 (2002). This doctrine is sufficiently important that it applies without regard to whether the decision was actually correct, but it is a matter of practice and discretion rather than an absolute limit on the courts' authority. *Id.* at 363. "The doctrine will not be applied if the facts do not remain materially or substantially the same or if there has been a change in the law." *Id.*

Our Supreme Court's holding was not, as defendant asserts, that denial of class certification was *the correct result*. Rather, our Supreme Court held that the circuit court's "denial of class certification was not clearly erroneous." The clear error standard provides that factual findings are clearly erroneous where there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake. *A&M Supply Co v Microsoft Corp*, 252 Mich App 580, 588; 654 NW2d 572 (2002). In other words, a finding of clear error means that the trial court made a mistake. But the logical inverse is not necessarily true: a finding of *no* clear error does not *necessarily* mean that the trial court was "right" in the sense of having reached "the only correct result." This is particularly true given the "great deference" generally afforded to trial courts, which are in a better position to examine the facts. *Lumley v Univ of Michigan Bd of Regents*, 215 Mich App 125, 135; 544 NW2d 692 (1996). A finding of no clear error can only mean that the reviewing court was not definitely and firmly convinced

that a mistake was made—not that it is definitely and firmly convinced that a mistake was *not* made.

In other words, the clear error standard of review must, by definition, accommodate the possibility of multiple "right" results, or at least "permissible" results, similarly to the abuse of discretion standard. Underlying both standards is the possibility that the reviewing court could have reached a different result had it been in the shoes of the trial court, or that the reviewing court suspects an error occurred but lacks a sufficient basis to justify reversal. Again, our Supreme Court was not definitely and firmly convinced that the trial court made a mistake in denying class certification. That cannot be construed as a determination that the trial court would have made a mistake in *granting* class certification. The cases defendant cites in support of its position are all significantly distinguishable because they all entailed an *explicit, affirmative determination* of a point of law that was subsequently disregarded after a remand. We particularly note *Reeves v Cincinnati, Inc (After Remand)*, 208 Mich App 556, 559; 528 NW2d 787 (1995), in which this Court determined that the defendant was not under a duty to give a warning and also stated that on remand the plaintiff's "failure to warn" theory "need not be submitted to the jury." *Id.* at 558-560. The trial court subsequently interpreted this language as a grant of discretion to submit the theory to the jury, which this Court explained was an elevation of style over substance. *Id.* at 560. But here, our Supreme Court did not determine that class certification was *unwarranted*, merely that denying it was not clearly a mistake. The law of the case doctrine does not apply here.

Defendant argues that class certification was substantively improper. We disagree.

A trial court's ruling regarding certification of a class is reviewed for clear error, meaning that the ruling will be found clearly erroneous only where there is no evidence to support it or there is evidence but this Court is nevertheless "left with a definite and firm conviction that a mistake has been made." *Zine v Chrysler Corp*, 236 Mich App 261, 270; 600 NW2d 384 (1999). The five factors a court must consider when deciding whether to certify a class are found in MCR 3.501(A)(1), and a plaintiff seeking to certify a class must show that *all* five enumerated requirements are satisfied. *A&M Supply Co, supra* at 597-598. We are not definitely and firmly convinced that the trial court made a mistake in finding all five requirements satisfied.

The first enumerated factor is numerosity. MCR 3.501(A)(1)(a). There is no particular number of members necessary, nor need the number be known with precision "as long as general knowledge and common sense indicate that the class is large." *Zine, supra* at 287-288. However, the class must be sufficiently well-defined and the members sufficiently well-identified that a reasonable estimate of the number of members can be determined. *Id.* Although plaintiffs' assertion that there are some 7,000 "problem trees" is unlikely to be the precise number, and although we agree with defendant's assertion that not every "problem tree" will necessarily equate to a class member, we find this factor amply satisfied. The newspaper articles submitted, as well as a letter from defendant's officials and defendant's decision to amend its ordinances apparently because of the tree problem, all support the conclusion that there are thousands of trees causing problems to homeowners' properties. General knowledge and common sense likewise indicate that there are thousands of putative class members. Defendant contends that this

factor is unmet because the precise number should be easily ascertained. However, the precise number does not *need* to be ascertained. Furthermore, common sense and general knowledge indicate that, out of thousands of homes in a residential area, there might be a certain amount of turnover in home ownership. Joinder of the homeowners as individuals would therefore likely necessitate regularly moving plaintiffs in and out of the case, so identifying them with precision may not be as simple and straightforward as defendant suggests.

The second factor, and the most significant to this litigation, is whether there exists a common question of fact or law that applies to the entire class, the resolution of which as a general issue will advance the litigation. MCR 3.501(A)(1)(b); *Zine, supra* at 289; *A&M Supply Co, supra* at 599. This factor does not require *all* issues in the litigation to be common; it merely requires the common issue or issues to predominate over those that require individualized proof. *Id.* This also relates to "the fifth factor in that if individual questions of fact predominate over common questions, the case will be unmanageable as a class action." *Zine, supra* at 289 n 14. The parties agree that a common question of defendant's liability exists and that individualized questions of how much damage each class member has suffered exist. The question before us is whether the trial court clearly erred in concluding that the *predominating* issue or issues to be resolved in the litigation are generalized and common to the class. We conclude that it did not.

Defendant asserts that the homeowners have sustained a wide variety of damages ranging from raw sewage flooding their basements, to cracked sidewalks, to unattractive lawns; moreover, the homeowners have likely undertaken a wide variety of prophylactic or

corrective actions. Defendant also notes that each homeowner would need to prove that any damage actually came from trees planted by the city on the public easement in front of the homeowner's property. Defendant therefore contends that class certification would be unwarranted because this matter would degenerate into a procession of "mini-trials." However, plaintiffs have presented photographs and deposition testimony from defendant's then-current director of parks and recreation[3] indicating that establishing *whether* any homeowner had suffered damages from city-planted trees is likely to be simple and easy. Plaintiffs have also provided a list of bills from plumbers indicating that sewer lines were plugged with roots. Most individualized fact-finding would concern the *amount* of damage, not the *existence* of damage. The amount of damage need not be uniform as long as the trial court has some basis for concluding "that all members of the class had a common injury that could be demonstrated with generalized proof, rather than evidence unique to each class member." *A&M Supply Co, supra* at 600.

The individualized determinations of the extent of damage will not predominate over the common question whether defendant is liable *at all* for damage caused by its trees. We further note that defendant's letter to homeowners, signed by defendant's service division administrator and apparently drafted by defendant's deputy mayor, which discusses "[t]he dreaded property maintenance ordinance" and the fact that trees planted by prior city administrations were destroying sidewalks, implies that defendant itself recognizes that its liability is a predominating common issue.

---

[3] The director is the person who, by operation of defendant's ordinances, has complete and exclusive control over trees in front of residences, including whether to permit their removal. Warren Ordinances §§ 38-2, 38-13.

We find no clear error in the trial court's determination that the predominant issues were generalized, not individual.

Under the third factor, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." MCR 3.501(A)(1)(c); *A&M Supply Co, supra* at 601. Factual differences between the class members' claims are not inherently fatal to certification, but their claims must share a legal theory and " ' "core of allegation." ' " *Neal v James*, 252 Mich App 12, 21; 651 NW2d 181 (2002), quoting *Allen v Chicago*, 828 F Supp 543, 553 (ND Ill, 1993) (further citation omitted). Here, the class members' legal theories are the same: trespass-nuisance, negligence, and governmental taking without due process. The class members' "core of allegation" is also the same: defendant planted inappropriate trees that damaged their property, and defendant is impeding or denying correction of the problem. Defendant contends that this factor has not been satisfied because of the potential for inconsistent claims and because of the different proofs that would be required. However, the significant differences pertain only to the amount of damage. Defendant's assertion that some class members' claims would be antagonistic to other class members' claims is speculative, but, in any event, class members may opt out of the class. The gravamen of the named plaintiffs' claims is the same as that of the other class members. For the same reason, we reject defendant's contention that the named plaintiffs will not "fairly and adequately assert and protect the interests of the class." MCR 3.501(A)(1)(d); *A&M Supply Co, supra* at 601. The trial court found this fourth factor in plaintiffs' favor from the outset. We find no clear error in that determination.

The final factor asks "whether a class action, rather than individual suits, will be the most convenient way to decide the legal questions presented, making a class action a superior form of action," the primary concern being that of practicality and manageability. *A&M Supply Co, supra* at 601; MCR 3.501(A)(1)(e). Under MCR 3.501(A)(2), the trial court is explicitly required to consider a number of subfactors in making its determination regarding the fifth factor. Our Supreme Court has explained that this fifth factor is "essentially the same" as the "convenient administration of justice" consideration required under former GCR 1963, 208, and it is essentially a practicality test. *Dix v American Bankers Life Assurance Co of Florida*, 429 Mich 410, 413-414; ns 4, 6; 415 NW2d 206 (1987). Furthermore, because "[a]lmost all claims will involve disparate issues of law and fact to some degree[, t]he relevant concern here is whether the issues are so disparate as to make a class action unmanageable." *Id.* at 419. We find that the arguments made under this factor are essentially duplicative of the arguments already discussed. We have considered the subfactors, and we find no clear error in the trial court's determination that this matter would be manageable as a class action.

Defendant further argues that, even if this matter proceeds as a class action, plaintiffs' trespass-nuisance claims remain unavailable to any parties not explicitly named as plaintiffs as of April 2, 2002, when our Supreme Court decided *Pohutski*. We disagree. Defendant relies on *Lessard v City of Allen Park*, 267 F Supp 2d 716 (ED Mich, 2003). However, decisions from federal courts are only persuasive authority, not binding precedent. *Allen v Owens-Corning Fiberglas Corp*, 225 Mich App 397, 402; 571 NW2d 530 (1997). Moreover, the holding in *Lessard* simply misconstrues the plain language of our Supreme Court's holding in *Pohutski*.

Our Supreme Court stated that the *Pohutski* holding "will be applied only to cases brought on or after April 2, 2002. In all cases currently pending, the interpretation set forth in *Hadfield* [*v Oakland Co Drain Comm'r*, 430 Mich 139; 422 NW2d 205 (1988)] will apply." *Pohutski, supra* at 699. Whereas the plain language of our Supreme Court's ruling applies to cases pending as of April 2, 2002, the federal district court concluded that it applied to plaintiffs named as of April 2, 2002. Our Supreme Court stated that its rationale was a concern for plaintiffs who would be denied any relief because of "an unfortunate circumstance of timing." *Id.* However, it chose to accomplish this goal by delineating the legal theories available in *cases*, not to *parties*. The trespass-nuisance exception to governmental immunity remains available in this matter. The names of the parties are not relevant.

Finally, defendant argues that the unnamed class members face individualized questions pertaining to the applicable statutes of limitations. Although any statutory period of limitations is tolled with regard to described class members upon the filing of a class action complaint, MCR 3.501(F)(1), the period resumes running "on entry of an order denying certification of the action as a class action." MCR 3.501(F)(2)(c). However, "[i]f the circumstance that brought about the resumption of the running of the statute is superseded by a further order of the trial court . . . the statute of limitations shall be deemed to have been tolled continuously from the commencement of the action." MCR 3.501(F)(3).

In *Cowles v Bank West*, 476 Mich 1; 719 NW2d 94 (2006), our Supreme Court addressed "whether the filing of a class-action complaint tolls the period of limitations for a class member's claim that was not

pleaded in the class-action complaint but arose out of the same factual and legal nexus . . . ." *Id.* at 13. Our Supreme Court discussed the balance between the policies to be served by statutes of limitations and by tolling, and it concluded that "under MCR 3.501(F), a class-action complaint tolls the period of limitations for a class member's claim that arises out of the same factual and legal nexus as long as the defendant has notice of the class member's claim and the number and generic identities of the potential plaintiffs." *Cowles*, *supra* at 20-21. In particular, putative class members who fear denial of class certification should not feel obligated to commence separate actions until after that denial takes place, lest all of them file needlessly duplicative actions. *Id.* at 25-27. Although in *Cowles* the class certification at issue was initially granted, our Supreme Court explained that this rule "has been applied in cases involving almost every conceivable basis on which class action status might be denied or terminated," including lack of typicality or commonality. *Id.* at 27-28.

Here, there has been no change in the claims or the "generic identities of the potential plaintiffs." And significantly, the trial court's conclusion that its earlier denial of class certification had been incorrect superseded the "circumstance that brought about the resumption of the running of the statute." Therefore, there is no limitations period on the unnamed class members' becoming part of the litigation. Furthermore, our Supreme Court's discussion of the policies in *Cowles* supports the conclusion that *Pohutski* is intended to apply to cases rather than to parties: as long as defendant was generally aware of the claims and parties it would face, the fact that the parties were not explicitly named should not be an impediment to their joining a pending class action suit in the future.

In summary, we find no procedural or legal impediment to the trial court's revisiting its earlier denial of class certification. We also find no clear error in the trial court's finding that class certification is appropriate. Finally, we find no procedural or legal impediment to extending class membership with regard to all claims in this matter to class members who were not explicitly named in the initial complaint or as of April 2, 2002.

Affirmed.